Hear ye, hear ye, this Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Donald C. Hudson presiding, along with Justice George Bridges and Justice Liam C. Brennan. The case is number 219-0384, in re Marriage of Robert C. Heist, Petitioner, Appellant, and Cross-Appellee, and Kendall L. Cornett, Respondent, Appellee, and Cross-Appellant. Arguing for the Appellant, Michelle M. Jochner. Arguing for the Appellee, Michael A. Wyman. Good morning, Counsel. Ms. Jochner, on behalf of the Appellant, do you have any questions about our procedures here this morning? Oh, Justice Hudson, thank you very much. No, I do not. Mr. Wyman, do you have any questions about the procedures we'll be following this morning? I do not, Your Honor. All right, then. If there are no questions at this time, Ms. Jochner, you may proceed on behalf of the Appellant. Thank you. Good morning, Your Honors. May it please the Court. Michelle Jochner, on behalf of Appellant Robert Heist. Although Robert filed for divorce nearly a dozen years ago, many issues relating to those proceedings remain unresolved, and today we are back before you on review of Judge Lombardo's decisions made on remand from Robert's prior 2015 appeal. Robert had successfully challenged several rulings that took nearly six years to deliver, despite this being a relatively straightforward divorce action, absent any child-related issues. The trial court's delay of more than half a decade was expressly found by Your Honors to be inexcusable. However, after this case returned to the trial court in 2016, another three years passed before the remanded issues were adjudicated, and we returned here last year. In light of this history, we have asked Your Honors to exercise your authority under Rule 366A.5 to grant the specific relief requested at the conclusion of each section of Robert's opening brief to conserve the resources of both parties, promote judicial economy, and finally bring an end to these proceedings. Your Honors have reviewed Robert's brief, which set forth in detail three main issues with several subparts. Our limited time permits only a brief summary of a few key points. Turning to Robert's first claim, Judge Lombardo abused his discretion in holding that this court's remand did not include a review of the duration of the maintenance award. There is no dispute between the parties that Paragraphs 38 and 39 of your prior order provided specific directions on remand to remedy two errors made in the divorce judgment with respect to Robert's income by instructing the trial court to revisit these calculations. Then, in Paragraph 53, this court delivered what it labeled it as its ruling on all arguments raised by Robert as to the maintenance award. Your Honors specifically numbered five claims of error, four of which are related to the duration of maintenance, and that were separate and apart from the errors in the calculation of Robert's income that were previously disposed of in Paragraphs 38 and 39. The key here is that these four numbered claims were neither addressed nor resolved by this court in any other part of the prior order, and indeed, they remain unresolved up to today. Your Honors stated that because you had already found a remand was necessary to revisit Robert's salary and recalculate the amount of maintenance, you did not need to review the overall award at that time. Significantly, that disposition left the claims in Paragraph 53 still on the table and undecided. Your Honors, Judge Rochford got it exactly right when she ruled that Paragraph 53 intended a general remand on the duration of maintenance, as Paragraphs 38 and 39 were focused on the income recalculation and the fact that Paragraph 53 listed but did not resolve. The duration claims could not be viewed as a simple oversight nor as an implied affirmation. After Judge Rochford was transferred to a different assignment and Judge Lombardo took over this case, he adopted the completely opposite view that Your Honors had remanded this matter solely for a mathematical correction regarding Robert's income, as stated in Paragraphs 38 and 39. As to Paragraph 53, after first stating that it created confusion, he then concluded that any consideration of the duration of maintenance was outside what this court had intended. Common sense dictates that this court would not list Robert's claims regarding the award's duration, only to then have the remand court refuse to address them and leave all of these claims unresolved. Instead of this absurd and unjust result, the only reasonable conclusion is that the duration of maintenance was generally remanded for further review. Tellingly, Kendall never directly responds to what this court stated in Paragraph 53. Instead, she presents a meritless argument that Robert failed to preserve this claim for repeal, misstating that the party stipulated that the duration of her maintenance award would not be challenged on remand. Your Honors, nothing could be further from the truth. To be clear, Robert did not forfeit this claim. First and foremost, Kendall violates Rule 341 H7 and thereby forfeits her own forfeiture argument, as she nowhere includes any citation to the record on appeal to support her claims. None. Moreover, her claim wholly lacks merit as she distorts the record and omits key background context detailed in Robert's reply brief, showing he repeatedly asserted the duration on remand before both judge Rochford and judge Lombardo, and that both judges ruled on his claims. It was after judge Lombardo held the scope of remand was limited only to a review of the amount of maintenance that he then ordered the parties to prepare proposed judgments. Resolving what he saw as the open issues, Robert maintained a standing objection to judge Lombardo's ruling and included that objection in his proposed order that the final order did not include this language and no way leads to the unreasonable conclusion that he somehow forfeited his arguments. He certainly did not. Returning now to the remand, had judge Lombardo not erred by limiting the scope of remand, a review of the maintenance award would have revealed that indefinite maintenance was an abuse of discretion based upon factual findings that were against the manifest way to the evidence. Time does not permit a discussion of each of the numerous factors showing this error, which are explained in detail in Robert's brief. However, we highlight the Kendall herself requested only five years of rehabilitative reviewable maintenance at the time of the divorce. And that this alone makes the courts Sue was Sponte permanent maintenance award, irreversible abuse of discretion, because as your honors held in Cantrell, a party cannot be granted relief in the absence of a corresponding pleading. Notably, Kendall has offered only silence in response to this argument. Moreover, the divorce course based its permanent maintenance award on its view that this was nearly a 20 year marriage. However, nearly six of those years occurred while the divorce case pended before it a delay. This court itself found to be inexcusable and for which equity dictates, Robert should not be penalized. Finally, although judge Lombardo corrected the calculation errors and reduced the amount of Robert's income, he abused his discretion and wrote against the manifest way to the amount of maintenance in the same percentage. It was inequitable to penalize Robert by requiring that he continued to pay the higher amount where that amount had been based upon an incorrect income calculation in some with respect to maintenance. Robert requests that pursuant to rule three 66, a five, this court vacate judge Lombardo's rulings and address the duration issue set aside the award of permanent maintenance. And at most grant Kendall five years of rehabilitative reviewable maintenance, as she requested reduce the monthly maintenance amount as stated in our brief retroactive to July 1st, 2014, and order that Robert be reimbursed for the amount of his total overpayment as explained in our brief and as calculated upon resolution of this appeal. Moving on to Robert's next set of claims, judge Lombardo abused his discretion by incorrectly interpreting the intent of this court's remand in paragraphs 78 and 80 of its prior order. To summarize first with respect to Kendall's alleged post-separation debt, judge Lombardo erred in narrowing the scope of remand to simply correcting the map rather than reviewing the entire issue. Second, as to Robert's claim, he should have been given credit for maintaining the party's two marital abodes during the nearly six years of the divorce proceedings. Judge Lombardo's rejection of this claim results in an inequitable punishment to Robert for the nearly six years it took to dissolve the marriage. Turning to Robert's final set of claims relating to the sale of the former marital residence as detailed in our brief, judge Lombardo committed errors of law and abused his discretion in granting reimbursement to Kendall for the pro-rated real estate taxes. And by granting her reimbursement request for sale related costs that was untimely and also by inequitably distributing the escrow account. As a final note, Kendall has filed a cross appeal solely focused on the issue of dissipation but has been barred by your honors from filing a cross reply brief. As we explain in our brief, Kendall has forfeited her cross appeal on two grounds. First, by not including even one citation to the record in the entire six pages of her claim. And second, by stipulating to fully resolve all issues regarding dissipation in the April 11th, 2019 stipulated order on remand. Moreover, as we will explain on rebuttal, her claim wholly lacks any merit. Thank you, your honors. We welcome questions on these points or any other issues presented in our brief that we were unable to address in this summary. Thank you very much, Ms. Jochner. Justice Brennan, do you have any questions of Ms. Jochner? Thank you. Ms. Jochner, if I may ask, assuming that you are correct and that the judge abuses discretion by awarding indefinite maintenance and should have instead given what Kendall requested, rehabilitative reviewable maintenance, I want to ask you about the remand that you're suggesting or not suggesting, I suppose. You ask us to conclude everything here. My question is, if the judge had authorized rehabilitative reviewable maintenance, aren't we at the review period now? And don't we need to remand this for that review? Justice Brennan, you make a very, very good point. Yes. And we did in our brief, we did note that we had requested that your honors per rule 366A5 rule that this would be a reviewable, rehabilitative reviewable maintenance award. And because you're absolutely right, that it would need to be then remanded. We do ask with respect to that specific claim that it would be remanded to the circuit court for that review. All right. Thank you. Let me ask you a question about the allocation of costs related to the sale of the marital residence. In your brief, you argued that the trial court should have granted the 2619 motion to dismiss Kendall's motion for reimbursement, essentially arguing equitable estoppel or latches. Is there any evidence though, in the record that suggests Robert was prejudiced by the delay in filing the motion? Your honor, with respect to that ruling by judge Lombardo that denied Robert's motion to dismiss, uh, judge Lombardo at first agreed with Robert that Kendall had violated the October 31st, 2017 order by filing her reimbursement request 552 days too late. And despite finding that she had violated that order, nevertheless granted, uh, her some relief in recovering some of the costs, the prejudice, the prejudicial effect here occurs where time passes, causing memories to fade and records to become remote, thereby impairing Robert's ability to verify Kendall's claims. The record showed that some of the claims that she made with respect to reimbursement were nearly three years old by the time that she presented them to the court. And again, the order that was entered on October 31st, 2017 had required her to present those reimbursement requests by November 13, 2017. And it's reasonable to conclude that the court put that deadline in there for exactly the reason that, uh, that we stayed in the brief that to have a freshness of memory and not to let the time pass to make it difficult to contest those, those expenses. All right. One other question, if I may, uh, you, uh, I believe in your argument, I know in your brief, um, talked about how Kendall, uh, Kendall stipulation, if you will. This is Brandon. Are you still there? Sorry. My sound is cutting in and out. I apologize. So you, you argued that, uh, Kendall forfeited her argument on cross appeal by stipulating to its resolution. Uh, my question is, didn't Robert stipulate to its resolution too? And I mean, I presume you're not suggesting what's good for the goose is good for the gander. Your honor. Um, are you just for, for clarification, um, are you, is, is your question whether Robert stipulated to the dissipation or I'm not sure if I understand, I just would like to clarify. No, no. And that's fair. I am referring to the dissipation. So, oh, I mean, he did stipulate as well. Correct. Well, both parties did stipulate to the, to the dissipation that the dissipation was a resolved in the stipulated order of remand that was entered on April 11th, 2019. And just for clarification, for the record, there were two orders that were entered on that date. There's one that was the order that resolved the remaining contested issues. And then there is also a second order on that same date. That is a stipulated order on remand that resolved the, the remaining issues. It was a cleanup order. It resolved the remaining issues that were still open on remand that the parties had agreed to. So yes, both parties had agreed at that time that the dissipation issue had been resolved, but your honor, only Kendall is, is, um, appealing the dissipation. Robert is not appealing any portion of the, any dissipation findings. It's only Kendall. So because Kendall is challenging this, the dissipation ruling that was made by judge Rochford earlier in the proceedings, um, she forfeits it by thereafter entering into a stipulation that clearly resolves all aspects of that dissipation issue matters, which have been stipulated to by the parties cannot thereafter be disputed on appeal. All right. Thank you very much. I have no further questions. Thank you, your honor. Thank you. Justice, do you have any questions for Ms. Jackman? I do. Thank you. Counsel, if I understand your argument regarding the, in your brief, the post-separation debt, it's essentially that the trial court failed to comply with the scope of the remand and not fully litigating this matter, but didn't the trial court explicitly find that the total testimony and the lack of any evidence to the contrary. Your honor, I do not believe that there was any kind of evidentiary hearing that was, that was conducted with respect to that. Um, I believe that the record will show that judge Lombardo looked at what this court stated in the remand, um, and that stated that Kendall had testified to only 56,180 in debt and therefore had taken what this court had stated, um, in, in heist one and use that as the basis. And our, our quarrel, uh, with justice Lombardo's treatment of that issue was that it appeared from what this court had stated in heist one was that there was a general remand that was intended by this court to look to the overall award of debt, because in the underlying brief that Roberts had presented to this court in heist one, he had raised the issue that there was no evidentiary basis in the trial record for this award to have been made by judge Yukina at the dissolution proceedings. So it appears that what judge Lombardo did was take what your honors had said in heist one and use that as the basis for his ruling and, and said that, although, um, he did state and I quote, although your honors could have been more specific and quote in your remand, I'm sorry, in heist one, in your instructions upon remand, he then read the remand as a specific remand rather than as a general remand. And that is where we believe that he abused his discretion. Did Robert continue his challenge to the duration of the maintenance in both heist one and upon remand or was this forfeited? Your honor, absolutely. Robert continued to maintain that the duration issue was, was at issue and was on the table. Kendall's argument in her brief that there is a forfeiture, uh, is exhibit a for the need for this court to enforce rule three 41 H seven and the need to include citations to the record in a party's argument. What Kendall omits from her argument at page 17 of her brief is that there are two separate orders which were entered on April 11th, 2019, an order that resolved the remaining contested to exclude the duration question. And then there was a, and that order is at C 2543 to C 2548. And then there was also a stipulated order on remand that can be found at C 2540 to 42 that reflects the party's agreement on certain uncontested issues, including the dissipation. Now at page 17 of her brief, Kendall includes a block quote, absent any citation from the, from the record. And that quote is, is a, um, he it's, it's put together. It's a quote from the first page of the contested order, which is from C 2543. And then you see ellipsis. And those ellipsis are from the last page of the contested order at 2548. There's five pages, five pages in between those ellipsis. And this really distorts these quotes and makes it appear that they are talking about the same thing, but they are not. These are two separate orders. There were stipulations that were only made by both parties in that second order. Robert in no way stipulated that duration was not on the table. As we note in our brief, when judge Lombardo, um, ruled that the remand was a narrow remand and a specific remand that did not include the duration, uh, he asked for proposed judgment to be submitted, uh, based upon what he saw as, as the remaining contested issue, which was the amount of maintenance. And in Robert's proposed order, Robert said this was over his standing objection. Uh, when judge Lombardo prepared the final order, he did not include that, uh, in the order, which would have made it perfectly clear that Robert in no way made any type of waiver or forfeiture of this claim. Okay. Can you give me, you said it was C 25. What was the, uh, site for that record? Sure. For, I'm sorry, your honor for which, for the, for the concept for the issues or the, I'm sorry, for the order, the ones, the, uh, the order, because you're alleging that it wasn't forfeited. It was addressed in that order. And I didn't copy that, uh, page site. Uh, the order, the contested issues are in 25 at C 25 43 to 25 48. Okay. And, and that, and that, okay. Thank you, your honor. Uh, counsel, I have no further questions. Uh, I have no further questions. All right. Thank you, justice Bridges. I have a question. Um, obviously Robert is containing the trial court, uh, erroneously denied him a credit for the 50% of the 378,000 expenses he paid in Lake Forest home while Kendall was residing there. Traditional record, however, that the trial court specifically found that the payments were tantamount to temporary maintenance, very inequitable under the circumstances. So on what specific basis did the court error in arriving at that conclusion? Uh, your honor, I believe that you're, we are, our position in, in our brief is that guidance for the way that this can be treated can be found in the current statute. Um, admittedly, the statute did not exist. It was not on the books at the time, but again, guidance can be found in, in five Oh four. B one 1.5. And that allows the court to credit a party for temporary maintenance paid during the pendency of the divorce case. Now, while there was no formal temporary maintenance order that was entered by judge Yukon, uh, judge, you can, I did find that the monies that Robert paid during the six years, uh, where he supported both households were implicit and I quote were implicit if not expressly paid in lieu of temporary maintenance. And quote, uh, so Robert then did argue that he should have received a 50% credit for this payment because it was akin to maintenance. Uh, if you were to look, um, if, if you were to agree your honors that Kendall should have only been awarded what she requested, which was five years of reviewable rehabilitative, reviewable maintenance, uh, Robert has already paid. If, if we look at this, these payments as being in lieu of temporary maintenance or really akin to temporary maintenance, um, in her briefs, uh, to this court in heist Kendall actually took the position in her brief in that first appeal that this was a temporary maintenance order. Well, if we look at this as being temporary maintenance, Robert has in effect paid 10 years of maintenance already. And our point was that if you were to accept that Kendall would only be afforded the five years, then Robert has already overpaid by five years because he has paid 10 years of maintenance. And by also having him pay all of this during the very extended six year period of those trial court proceedings, which has already found to be inexcusable, that works as an inequity to, to Robert under the facts here. All right. Thank you, Ms. Jackner. Um, thank you, your honor. All right. This time then, uh, Mr. Wyman, we turn to you for your argument on behalf of the appellate. Uh, thank you, justices. If it may please the court. Um, when justice Burke issued his decision in heist one, um, there were specific directives that were issued, um, and incumbent upon the trial court to undertake on remand. Um, in fact, there were nine of them and all of them were extremely specific, but for one, um, clearly pursuant to paragraphs 38, the court was to determine very black and white was Kendall's income included for the year 2005 in the number and amount that was ascribed to Mr. Heist for income for that specific year. Second, the court was to clarify, revisit the mathematical calculations as to Robert's average income in conjunction with giving this directive, um, the court on this court unequivocally affirmed judge Yukon on the trial court in its determination that using the years 2005 through 2008 were appropriate means by which to a judge, Mr. Heist's income. And furthermore, that disallowing evidence relating to 2009, 2010, and potentially 2011 was proper. And it was affirmed, um, judge Lombardo fulfilled by way of his orders, those two specific directives me. And in conjunction there with the court was to specifically pursuant to paragraph 53, um, revisit Robert's RCA related salary. And to recalculate maintenance, that was the specific directive that was given to judge Lombardo in the trial court. When adjudicating these remanded issues, all three very specific directives made on remand in conjunction with the trial, with, with the appellate courts affirmation of the findings relative to Mr. Heist's income from his work with Hershey, Mr. Heist's RCA credit card income, and Ms. Cornette's income. So very limited issues were presented to the trial court on remand by the directives of justice Burke in his decision in Heist one, as it related to what was to be undertaken as it related to maintenance. There were subsequent, there are two specific directives on remand. Number one, a specific remand vacate a finding of $9,000 held to be dissipation that related to a transaction between Archon and entity controlled by Mr. Heist and RCA his business. Then five was to determine what dissipation was undertaken by way of Mr. Heist's use of credit cards. A specific directive determined specifically what Mr. Heist used his RCA credit cards for the years, 2011, 2012, 2013. And the first half of 2014 to determine what transactions were personal in nature and make a factual finding as to dissipation in lieu of the alternative determination made by judge as a related to extrapolating those years of dissipation based upon prior years of dissipation. Then six, very specific, get a current value for the first Republic bank account. Seven, get a specific value ascribed for the Range Rover automobile and eight, review the calculations undertaken by judge to determine what the debt was that was to be divisible between the parties that was taken by my client during the pre-decree portion of the case, because the total determination was $56,100 and judge Yukon had ascribed a total value of $60,000, which was factually in conflict. And then number nine was the discretionary remand, which allowed the trial court in its discretion to determine whether or not there should be any type of credit given to Mr. Heist for payments made, A, during the course of the marriage, B, with marital funds being his earnings during this time and C, for the preservation of a marital asset that Mr. Heist ended up receiving his due share of. All nine of those specific directives were undertaken by judge Lombardo in a meticulous fashion. Some of those as it related to the valuation of bank accounts and the valuation of the Range Rover were resolved by stipulation at the court's request. The mathematical calculations were undertaken in short order by judge Lombardo and judge Lombardo properly determined that the issue as it related to duration of marriage had not been returned to the trial court upon remand. There is no reason to deduce that judge Burke in any way intended for, justice Burke I should say, in any way intended for the issue of the overall award of maintenance to be reviewed on remand. That by no means is a directive on remand and there's not even a reference to justice by justice Burke to the trial court that it was in the trial court's discretion to review the overall award or revisit the overall award. Now of those nine were specifically remanded issues, eight of them were addressed by judge Lombardo. The ninth, namely the determination as it related to credit cards, was resolved by judge Rochford on a summary basis. Judge Rochford in the face of this court's directive to specifically determine what RCA credit card charges were made between January 1st, 2011 and June 30th of 2014 that weren't related to the business and thus would constitute dissipation was not fulfilled. Judge Rochford made that determination that she would not allow the adjudication of it. She would not allow discovery to be conducted in relation to it and she would not address the issue and the common law record is very clear of that. As it related to the stipulations from April of 2019, those only acknowledge that by way of judge Rochford's order, she had in fact prevented there from being an adjudication and that in no way in any constructive fashion counts or should be credited against my client as some type of acknowledgement by her that she was stipulating that that was not an issue that was subject to appeal in this matter and she timely filed a notice of appeal of Rochford's order doing that. Once judge Rochford ruled, there was nothing more she could do in the trial court and there was no resolution between the parties as to this issue of dissipation. As it relates to the other the claims that are made, there's no question that contrary to what Ms. Jocker told you, this was not a relatively straightforward case. A 14-day trial was required in this matter. Mr. Heist has been extremely litigious and Mr. Heist has protracted and prolonged this litigation. With regards to the argument that Ms. Cornett has somehow constructively acknowledged that she was only entitled to five years of reviewable maintenance, I ask this court to appreciate that this was in the form of a written prosing argument and proposed judgment for disillusion of marriage. It was not a pleading and in fact, what it was was part of a global proposal in which there was a wealth of property that was requested that be awarded and be found to be held as dissipation against Mr. Heist that was rejected. There were claims for attorney's fees that were rejected. So I believe that it's not proper for them to extrapolate out this one alleged admission of what she was entitled to. The trial court made a global determination based upon the arguments. The award of permanent maintenance is supported by a wealth of findings that are made and upheld by Justice Burke within Heist I, which established that my client has a historical income of $26,000 a year and that in order for her to live the lifestyle the parties were accustomed to during the course of their marriage, she required $100,000 a year. The trial court within its rulings under the judgment and the order on the motion to reconsider made no findings that my client had the ability to rehabilitate or that rehabilitation should be considered. And this appellate court within its ruling in Heist I makes no findings at all as it relates to arguments made by Mr. Heist that the court erred in its finding as to the duration of the marriage. I agree with Judge Lombardo that paragraph 53 really was for him to interpret. And I believe without a shadow of a doubt, he interpreted appropriately and fulfilled his obligation on remand for a specific term of remand with very, very detailed precision in resolving these issues. I note that nowhere in Heist I is there any reference to this being a general remand or any directives to the court to redetermine the overall award as used. And thus, Judge Lombardo fulfilled his specific directives. As it relates to the other issues which are raised by this, it's clear by way of the common law record and Justice Burke's decision that this court's only issue taken with the award of debt or the assignment of debt related to the mathematical errors that were conducted by Judge Yukon, i.e., his rounding it up to $60,000. And in fact, in Justice Burke's opinion, he specifically finds that the court may want to reexamine the specific allocation of Mr. Heist being assigned 45% of the debt rather than being assigned 55% of the debt. So clearly within Heist I, there is a finding that it was appropriate for the trial court to assign my client's debt and that the only issue on specific remand to Judge Lombardo related to that mathematical determination and that really correcting of the record that it was $56,100 and not $60,000. As it relates to Judge Lombardo's determination that the mathematical differences in averaging of Mr. Heist's income did not render it to be consequential in the trial court's award of $6,000 per month, I think that's substantiated by the record. And finally, as it relates to the arguments that are raised relative to Judge Lombardo, reimbursing my client for valid, bonafide, and documented expenses that were incurred in putting the home in a condition suitable for sale, that had been assigned to be an issue by, strike that, that had been determined by Judge Yukuna in a portion of his judgment that that would be a divisible cost, that the cost to be incurred to put the home in condition of sale were required and was necessary. And there was no prejudice to Mr. Heist. Mr. Heist got credit for certain payments that he had made to put the home in a condition suitable for sale, and Mrs. Cornett was reimbursed for certain expenses that she had incurred to put the home in a condition suitable for sale. And as a result of that, they were able to effectuate the terms of their judgment, sell the property, and divide the proceeds. I thank the court for its time today. All right. Thank you very much, Mr. Wyman. Justice Brennan, do you have any questions of Mr. Wyman? I do. Thank you, Justice Hudson. So, Mr. Wyman, if we were to agree with your position that the scope of remand was essentially limited to these recalculation issues, we're essentially saying that Robert's remaining challenges to the overall maintenance ward will never be reviewed. In saying that, are we—is the conclusion that Heist I implicitly affirmed all these rulings by the trial court down below, even though it said it wasn't going to reach these issues? I think that is the determination that needs to be made, Justice. I think that if you read throughout Heist I, the section of the analysis that's dedicated to the maintenance award, this court, in a large part of its 32-page decision, went into a comprehensive analysis of all the factors that were used in the determination of maintenance. And I think that this court gave specific directives to the court that were relating to calculation. There was no directive made in any fashion to Judge Lombardo that he should at all examine or revisit the issue of duration. And the question that's now before this panel is, did Judge Lombardo err on remand? And you can't find that he was directed to review the issue of duration, and he didn't do it. Can I ask a different question? Is there anywhere in the record where Kendall asks for indefinite maintenance? She asks within her pleadings for maintenance. Does she ever specifically request indefinite maintenance? I don't know if the initial pleadings set forth that, because that would be incorporated into the initial petition for disillusion of marriage, as well as the counterpetition for disillusion of marriage, which I believe is... Well, I will tell you that the counterpetition for disillusion of marriage in the Adamnum Clause asks for temporary maintenance. Within the counterpetition for disillusion of marriage only asks for temporary maintenance, Justice? I apologize. Hold on one second. And I should ask to clarify, there would be two pleadings, both a response to the petition for disillusion of marriage, as well as a counterpetition. Justice Brennan, are you still with us? Actually, what I'm going to... It occurs to me, or I've just realized that that was filed, but never presented. So I won't hold you to that. But in the closing argument, you do concede she does not ask for indefinite maintenance, correct? As part of her global proposal, you are correct. And I trust you appreciate in reviewing that there was a wealth of relief, hundreds of thousands of dollars that was rejected. I do appreciate that. So in the last question I have for you relates to the cross appeal and the lack of record citation and our rules. Can you address why that cross appeal and the arguments wouldn't be forfeited given the lack of any record citation? That I believe it's clear and defined from this perspective. There's no question that the common law record reflects that at the very beginning of this matter coming back before the trial court on remand, there was a petition filed by us as part of the record to adjudicate these issues. In addition, there were motions made relative to discovery. And then there's an order that's entered by Judge Rochford that specifically provides for those. So I think it would be grossly prejudicial to Kendall to compromise her claims when clearly she presented those appropriately on remand and those were flat out demand. The court wouldn't even adjudicate it. The court wouldn't entertain it. The court wouldn't do anything. Um, so the record on appeal on that is very, very limited. There's pleadings and then there's an order and there's a transcript also of the argument that was made at the time. None of which is cited to in the brief, correct? We cite to the orders and we say to the dates of the pleadings. All right. Well, I thank you for your answers. I have no further questions. I have a question, Mr. Wyman. It was touched on by Justice Brenner earlier, but I'd like to pin this down. Understanding that in the written closing arguments, closing arguments in this case, Kendall did not request indefinite maintenance. In her written closing arguments and in the proposed conclusion judgment, he explicitly requested an award of reviewable rehabilitative maintenance in the amount of $62.50 per month for a period of 60 months. Was that not her request in the closing argument? That was your Justice Hudson. You are correct. That's part of it. But the court appreciates that position was taken based upon a request for a finding of hundreds of thousands of dollars of dissipation findings as it related to wards of assets and determinations that were made as the relation to attorney's fees. And all of those claims were part of a global position that was taken by Ms. Cornett. So I think it would be unfair to say, oh, that was her position in a vacuum without looking at all of the other positions, because it would be different had she been awarded all of the other relief fees, she thought. If she had been awarded attorney's fees, if there had been findings of greater dissipation, if she had been awarded more assets, it would be a different situation. But how do you respond to the argument that the court abuses discretion because the trial court erred by sua sponte, providing an award of indefinite maintenance that was not asked for? I understand you're saying this is raised in different parts in the record, perhaps. But when somebody proposes reviewable maintenance and specifies an amount of reviewable maintenance, it doesn't really count in this case. It's in the record elsewhere. I understand that was a statement, Justice, so I apologize. Can you clarify what your question is? Because I want to answer it specifically. My question is generally a party cannot be given relief that is not requested. If in the written closing argument she asks, and in the proposed dissolution judgment itself, she explicitly requests an award of reviewable rehabilitative maintenance and specifies the amount and specifies it will be reviewed in 60 months, how is it not a request for rehabilitative maintenance? It's a request for maintenance. There's no question about it. But as I stated before, you're taking it out of a global position, an argument that she made. It wasn't a pleading in which she said, I'm not seeking permanent maintenance. She clearly said and she had articulated it throughout and advanced her position that she was entitled to maintenance. The court had the discretion to determine what type of maintenance was appropriate in consideration of all of the factors under 504, including the property that was awarded to her and including a variety of other things. So I understand that, yes, in that argument we asked for it, but I don't think it would be equitable to say, hey, no matter what, you're bound by that position when you're not getting so much of the other relief you had sought with in conjunction therewith. So there's no question she had always advanced her position that she was entitled to maintenance. And the court made a determination as to the amount and duration in light of all of the 504. So I think you have to look at that and say, well, the judge obviously made his determinations relative to maintenance in conjunction with his determinations as they related to property division, property allocation, dissipation, and attorney's fees. So I think that, Judge, you can properly exercise his discretion on both the issues of maintenance, property division, and attorney's fees in accordance with sections 503, 504, and 508, and that at this point, I understand this, but I believe that on remand, the question is, was the trial court directed to review the issue as to duration? And that's the properly framed issue before the court. But as it relates to our position in the arguments and the proposed judgment, those were part of a global argument. All right. Thank you, Mr. Wyman. At this time, we turn back to you, Ms. Jackner, for you to present your rebuttal. I have a question. One question. Justice Hudson, I have one question on this matter. It pretty much covered everything else that I had, but I have one. Hello? Yes. Justice Bridges, can you hear us? Oh, yeah. Counsel, you agree that in Heist I, Robert, the appellant challenge of maintenance, he challenged the maintenance award. It was based on the duration of the maintenance, the amount of appellee's income, and of the marital share of the estate. So shouldn't this court's remand regarding maintenance then have been considered a general remand to allow for review of the entire maintenance award? I find no basis in Justice Burke's decision to note that. Justice Burke, as it relates to the issue of giving Mr. Heist potential credit for the payments he made pre-decree, specifically directs the trial court to have discretion and have the ability to make those decisions. It's unique as it relates to all of the other specific directives that are made on remand, a specific remand. There's nowhere that Justice Lombardo or we believe that Justice Burke directed the trial court to review the overall award. There's nothing that leads to that conclusion. In fact, the directives are to recalculate maintenance.  Thank you. I have no further questions. Thank you, Justice. Justice Brennan, do you have any follow-up questions based on that? I do not. Thank you. All right. Thank you. I do not either. And so then at this time, Mr. Ackerman, we'll turn to you for your rebuttal argument. Thank you, Your Honors. First and foremost, I note that counsel repeatedly stated in his argument that the common law record showed certain things in support of his position. Yet it's notable that he did not cite to that common law record in most of the brief. We know that most of what was argued by counsel in his brief was not supported by record citations. And therefore we repeat our position that those points that are not supported by record citations are forfeited pursuant to rule three 41 H seven. Now counsel basically admitted to your honors that the entire cross appeal that he submitted is unsupported by any record citation. And as I noted in my opening, there is not one record citation in the six pages of that cross appeal. Indeed, the rules are not advisory. The rules of the Supreme court regarding preparation of appellate briefs. They are rules to be followed and rules to be enforced. Robert is the party who is prejudiced as well as this court by lack of record citations. It is well settled throughout the case law that an appellate court is not a depository in which a party may quote dump the burden of argument and research and quote near honors said that in in Ray marriage of Patrick, um, 2012, Illinois app. Second one one zero four nine five in paragraph 38. That's just one example of many times that this court has stated that principle. Robert, again, I said, is, as I stated, is the one who was prejudiced as well as this court by the lack of citations. Just as this court found in paragraph 62 of heist one that Kendall had forfeited arguments regarding her dissipation claim because she similarly violated rule three 41 H seven by failing to provide citation to the record for her contentions. This court should apply rule three 41 H seven. Exactly the same here. This is a documented pattern, um, that has. That has taken place throughout these proceedings, uh, with respect to the scope of remand. Um, it is well settled that questions that had been actually decided on appeal are foreclosed from further consideration upon remand. But in contrast, those issues that are not actually decided by the reviewing court may be considered following remand. And we cite the case law in support of those positions. People versus Abraham Filippetto here, there was no decision on the four, four of the five numbered claims that are set forth by your honors in paragraph 53 of heist. One, uh, counsel repeatedly focused in his argument and also in his brief on paragraph 38 and 39. Again, as I stated in the opening, there is no dispute between the parties that there was a specific remand on the issues of income of both Robert and Kendall. But what about paragraph 53? Where does that leave us? That leaves us with issues that are unresolved. And, um, judge Rochford again, got it. Absolutely right. She noted that your honors did not address these issues and that could not be interpreted as an oversight or as an applied affirmation. Counsel offers no case law to support that claim that the failure of this court to address issues that were presented squarely on appeal somehow constitute an affirmance, um, that, that cannot be the case. Uh, counsel speaks to other issues, uh, that were resolved by stipulations between the parties and gave you a laundry list of many things that were remanded. Those are not an issue in these appeal in this appeal, your honor. And that's just avoiding the question at hand as to what do we do with paragraph 53 and those issues that remain unresolved. Again, it is our position that those issues were meant for the trial court to resolve and judge Lombardo abuse of discretion in this reading the remand, um, and in paragraph 53, uh, as opposed to judge Rochford again, who got it. Absolutely right. Moving on to the duration of the maintenance, um, your honors correctly. Uh, in questioning, uh, counsel that Kendall asked for rehabilitative reviewable maintenance and did not ask for a maintenance that was permanent intervention. Um, the record shows that permanent or indefinite maintenance is appropriate where the recipient spouse devoted significant time to raising a family in lieu of pursuing a career and is not justified where the recipient has been employed throughout the marriage and seemingly has the potential to become self-sufficient as does Kendall here. She herself requested only five years of rehabilitative reviewable maintenance. And in her closing argument, she herself said, and I quote from page C one, four, one, two, that she would be required to quote, not only rehabilitate herself, but educate herself and quote, so that she could again, quote, contribute to her support, to the greatest degree possible end quote. And again, that is at C 14, 12. Um, the court to respond to a ruling affording Kendall permanent maintenance is by self or reversible abuse of discretion under your courts. Um, this court's ruling and intermarriage of Cantrell, which is a 2000 decision in which the trial court abuses discretion into a spontaneity awarding permanent maintenance when it was not requested. And that case also says it is not maintenance is not an absolute right of every party to a marriage factors are looked at. And here the factors include that the parties had no children, which would have impaired Kendall's ability to earn income. And Kendall was continuously self-employed. In fact, she's an entrepreneur who started her own business one year after marriage, after three years of college, um, is stated in her brief. She states in her brief that she's a high school graduate, but her testimony shows that she had three years of college at the university of Kentucky. And that's at R four 63. She's a business owner. She's an entrepreneur. She herself testified that she had a gift in her field of interior decorating, but then became insulted when asked if she should find other employment when she was only generating $1,000 per month, which was less than one third of her monthly living expenses. She replied, this is my gift. Um, Kendall has the ability to earn her own support and to help in contributing to her own support. She is not a candidate for permanent maintenance and the trial court aired into a spontaneity affording her that permanent maintenance award, uh, and see which respect to the cross appeal, just a, just a point with respect to the cross appeal as your honors noted. Um, and as stated earlier, there is not one citation to the record in the cross appeal. Therefore it is forfeited on that ground. It is also forfeited on the basis that, um, the dissipation issue was resolved fully in the stipulated order on remand and that's at C 25, 40 to 42. And that was entered on April 11th, 2019. This is a knowing involuntary waiver of any further rights that she had in bringing back, um, that dissipation claim before the court. And this is in direct contrast to what Kendall erroneously alleges was a stipulation, um, by Robert as to, um, the duration argument there was again, I underscore there was no stipulation by Robert that he was in any way forfeiting or waiving his duration argument. But this at, um, page 25, 40, uh, to 42, this is a stipulation where Kendall waived any claim that she has. Therefore her, uh, cross appeal is barred because it's already been resolved. And if your honors decide that it is not that you wish to reach, reach the merits, um, judge Rochford properly construed the remand in heist one by refusing to allow Kendall to conduct additional discovery on the RCA credit card dissipation claim. Um, the only reasonable conclusion of looking at paragraph 64, 65, and 66, uh, of heist one is that this court intended that the circuit court examined the evidence already of record and disallow any dissipation claims for the period subsequent to January 1st, 2011, for which no evidence existed at trial. And judge Rochford noted, um, that Kendall had filed a motion to reopen proofs in the trial court yet in that motion to reopen proofs, which was filed prior to the court entering its judgment on dissolution. She made no reference to any evidence related to her dissipation claim against Robert. And in fact, she failed to call that motion to reopen proofs for hearing. So Kendall's attempt to, has attempted to improperly use this remand to obtain a second bite at the proverbial apple and try to remedy her strategic missteps with respect to the dissipation issue and at the dissolution level. And judge Rochford correctly found that Kendall, um, that Kendall's motion to reopen proofs did not make reference to her dissipation claim. And therefore the reopening proofs on that issue on remand was improper. There was no basis for her argument. And in any event, your honors, this entire argument is rendered moot. Yes, your honor, this entire argument is rendered moot. Um, in light of the subsequent stipulated order on remand and in closing your honors, we just would, would remind your honors that this litigation has already spanned for more than a decade. And with respect to cases such as this, our Supreme court has instructed that there must be an end to litigation. And we ask that your honors, uh, consider, um, granting Robert the relief that he requests at the end of each section of his brief pursuant to rule three 66, a five, and finally bring an end to these proceedings. Thank you very much. We appreciate your attention to this matter. Doctor, um, this is Bridges. Do you have any questions? I have no further questions. Thank you. Thank you. Justice Brennan. Do you have any further questions? I do not. Thank you. I also do not have any additional questions at this time. So finally, Mr. Wyman, we turn back to you for your rebuttal. Mr. Wyman. Do you know if Mr. Wyman is still on the call? I'm sorry. Forgive me. My mute was on. Forgive me. As it relates to the issues raised by Ms. Jockner with regards to the directives of this court on dissipation, there's no question that there was a motion to reopen proofs that was filed prior to the entry of judgment that has no bearing to the issues that were brought back on remand. There was a directive within this court's decision that evidence needed to be presented as it related to the issues relating to Mr. Heist's dissipation of assets on his credit cards between January 1st, 2011 and July 1st of 2014. I think there's no question that was a specific remand on that specific issue. And the only way that that issue could have been resolved would have been by way of the introduction of evidence relative to the credit card charges, because this court in Heist 1 made the specific determination that speculating as to that and projecting that based upon earlier years was an appropriate basis to determine additional imputed income, but was not an appropriate basis to determine dissipation during that course of the marriage. And the directive was to examine the dissipation claims for that time. By Judge Rochford refusing to do that, she specifically refused to fulfill the directives of this court on remand to address those issues and wouldn't let those issues be adjudicated. With regards to the remaining issues that are before the court as it relates to the duration of the maintenance, I trust this court appreciates this, that there has been an extended duration here at this juncture. And the case has been pending before both the trial court and the appellate court now for in excess of 11 years. And I trust that this court also appreciates that Ms. Cornett has relied on the trial court's decision and has relied upon the decision in Heist 1 as it relates to the award of permanent maintenance and indefinite maintenance. And because of that, Ms. Cornett has accepted the property division terms, accepted the rejection of the claims for attorney's fees, and has accepted the award of permanent maintenance and has not rehabilitated herself, has not done anything and has advanced in age quite a bit so that she has relied on that. And I don't believe that there's anything in the record that could be deduced by her to lead to the conclusion that she would need to rehabilitate herself and that she couldn't rely on the trial court's order of permanent maintenance that wasn't specifically reversed and wasn't specifically remanded in Heist 1. And those closing arguments were submitted, as this court knows, almost nine years ago. And since that time, my client has received and has relied on that permanent maintenance and a wealth of life decisions she's made. And I hope that this court will take that into consideration in adjudicating these issues on remand. I thank the court for its time. MR. CARRINGTON. Thank you very much, Mr. Wyman. Justice Bridges, do you have any questions of Mr. Wyman? Justice Bridges? MR. BRIDGES. Sorry, I have no further questions. MR. CARRINGTON. Justice Brennan, any further questions of Mr. Wyman? MR. BRENNAN. I just have one. Wasn't the motion to reopen proofs in front of Judge Rocheford related solely to the Hershey income, and it didn't ask to revisit the credit cards or the scope of the credit cards? MR. CARRINGTON. First of all, it wasn't before Judge Rocheford, Your Honor. It was before Judge Ukina on a pre-decree basis.  BRENNAN. Sorry, okay. MR. CARRINGTON. Okay. And second, there surely was the motion to reopen proofs as it related to the Hershey income because we acknowledge as to the Hershey income. Mr. Heist had not complied with Supreme Court Rule 213i during the pendency of the case and before the entry of judgment. So I don't look at the two as having any correlation. Because while we were waiting for the judgment, we brought a motion to reopen proofs because we knew additional income was being earned by Mr. Heist that was marital property. We wanted that additional information, and that motion was never adjudicated by the court. The court wouldn't hear it, and then the court entered its judgment for disillusion of marriage. MR. CARRINGTON. All right. Thank you. I have no additional questions. MR. STEINWALD. I do not have any additional questions either. So at this time, this will formally conclude the proceedings here this morning. I would like to thank both counsel for their presentations and really for the quality of their advocacy here this morning. The matter will, of course, be taken under advisement, and a written disposition will issue in due course. That will conclude the proceedings. Thank you all very much. OPERATOR. Thank you, Your Honors. Thank you.